IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGIA K., | |
| Plaintiff, | Case No. 23-cv-02179 |
| v. | Judge Mary M. Rowland |
| MARTIN O'MALLEY, Commissioner of Social Security,[1] | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Georgia K.[2] filed this action seeking reversal or remand of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DBI) under the Social Security Act (the Act). [1]. For the reasons stated below, the Court denies Plaintiff's motion for summary judgment [10] and grants the Commissioner's motion for summary judgment [11].

### I. PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits in October 2020, alleging that she became disabled on November 1, 2019. [9-1] at 20 (ALJ decision).[3] The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.*). On August 30, 2022, Plaintiff, represented by

---

[1] Martin O'Malley has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

[2] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[3] The Court uses the CM/ECF page numbers on the filings.

counsel, testified at a hearing before an Administrative Law Judge (ALJ) by video conference. (*Id.* at 48). The ALJ also heard testimony from Edward Pagella, a vocational rehabilitation consultant ("V.E."). (*Id.* at 74). On October 5, 2022, the ALJ determined that Plaintiff was disabled under Sections 216(i) and 223(d) of the Act as of September 30, 2022. The ALJ further denied Plaintiff's request for benefits before that date. (*Id.* at 20-41).

Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since the application date of November 1, 2019. (*Id.* at 23). At step two, the ALJ found that Plaintiff had severe impairments including: rheumatoid arthritis; fibromyalgia; obesity; benign paroxysmal vertigo; degenerative disc disease of the lumbar spine; degenerative joint disease of the hops and sacroiliac joints; depression; and anxiety (*Id.* at 23-24). The ALJ also considered Plaintiff's history of uterine fibroids and cervicitis, but noted that Plaintiff sought treatment which appeared successful based on the medical records, and Plaintiff did not mention these impairments during her testimony, further suggesting that they have not caused more than minimal or transient residual symptoms. (*Id.* at 23). The ALJ ultimately found Plaintiff's medical impairments significantly limited her ability to perform basic work activities. (*Id.* at 24).

At step three, the ALJ determined that since November 1, 2019, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the enumerated listings in the regulations. (*Id.* at 24).

In reaching this conclusion, the ALJ considered listing 1.15: disorder of the skeletal spine resulting in compromise of a nerve root; listing 1.16: lumbar spinal stenosis resulting in compromise of the nerve root or cauda equine; listing 1.18: abnormality of a major joint in any extremity; listing 2.07: disturbance of labyrinthine-vestibular function; listing 12.04: depressive, bipolar and related disorders, listing 12.06: anxiety and compulsive disorders; and listing 14.09: inflammatory arthritis. Although obesity and fibromyalgia are not listed as impairments, the ALJ, in accordance with SSR 19-2p and SSR 12-2p, considered whether these conditions medically equaled a listed impairment. Because the claimant's impairments, "alone and in combination" did not reach the level of severity contemplated in any relevant listings, the ALJ found that disability could not be established on this basis. (*Id.*).

The ALJ specifically found that the severity of Plaintiff's impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 (depressive bipolar and related disorders), or 12.06 (anxiety and obsessive-compulsive disorders). (*Id.*).

In making the findings, the ALJ considered whether the "paragraph B" criteria were satisfied. To satisfy "paragraph B", the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, on a sustained basis. (*Id.* at 25).

In the ALJ's assessment, the Plaintiff's limitations are not as severe, persistent, or limiting as she has alleged. (*Id*.). Specifically, the record contained no inpatient psychiatric treatment during the relevant period. (*Id*.). The record showed that the Plaintiff's symptoms have responded favorably to treatment. Indeed, although Plaintiff appeared disheveled, distracted, and at times communicated in a tangential or rambled manner, overall Plaintiff was observed by multiple psychotherapists to exhibit good insight, appeared pleasant, friendly, cooperative, with normal judgment, reasoning, memory and cognition. (*Id*.). The record also contained a cognitive test, where Plaintiff was able to complete a range of tasks, recalling a series of up to six digits forward and in reverse, recall a recent news story, identify the current and previous U.S. presidents, identify five major cities, complete serial seven subtractions, interpret simple proverbs, and identify similarities and differences between a pair of objects. (*Id*.). The ALJ further found that Plaintiff has a moderate limitation in understanding, remembering or applying information; mild limitation in interacting with others; moderate limitation in concentrating, persisting or maintaining peace; and mild limitation in adapting or managing oneself. (*Id.* at 26). Because Plaintiff's mental impairments did not cause at least two marked limitations or more extreme limitations, the ALJ determined "paragraph B criteria" is not satisfied. (*Id*.).

The ALJ also considered whether "paragraph C" criteria was satisfied. In so doing, the ALJ determined that the record did not establish that the Plaintiff's impairments have resulted in marginal adjustment (i.e. minimal capacity to adapt to

changes in her environment or to demands not already part of her daily life), and the record showed Plaintiff continues to socialize with others, go grocery shopping, drive, watch television, listen to music, bathe herself, dress herself, prepare meals, and try to keep up with household chores. (*Id.* at 25-26).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[4] and determined that Plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b), except Plaintiff cannot:

> climb ladders, ramps or scaffolds. She can occasionally climb ramps and stairs, and occasionally balance, stoop, crouch, kneel, and crawl. [Plaintiff] should never be around unprotected heights and dangerous heavy moving machinery. [Plaintiff] can understand, remember and carry out simple, routine instructions, and use judgment limited to simple work-related decisions.

(*Id.* at 26).

The ALJ then determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 38). At step five, the ALJ concluded, relying on the testimony of the V.E., that Plaintiff could perform unskilled, light work existing in significant numbers given her RFC and vocational profile before September 30, 2022. (*Id.*). However, when the ALJ was evaluating Plaintiff's claim, Plaintiff was nearly 55 years old, at which point Plaintiff would change age categories. Because of this, the ALJ applied the age categories nonmechanically and considered Plaintiff as a person of advanced age in her favor. Considering this more advanced category, coupled with her vocational profile and RFC, the Medical-Vocational Guidelines

---

[4] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a).

directed a finding of disabled. (*Id*. at 39-41). Thus, the ALJ found that Plaintiff was not disabled prior to September 30, 2022, but became disabled on that date and has continued to be through the date of the ALJ's decision. (*Id*. at 40). The Appeals Council denied Plaintiff's request for review on February 2, 2023. (*Id*. at 6-8). Plaintiff now seeks judicial review of the ALJ's decision, that stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Section 405(g) of the Act authorizes judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The Court may not engage in its own analysis of whether the plaintiff is disabled, nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "The ALJ's decision will be upheld if supported by 'substantial evidence,' which means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014)). The Supreme Court has stated that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). In addition, the ALJ must "explain his analysis of the evidence with enough detail and clarity to permit meaningful

appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)). The Court accords great deference to the ALJ's determination, but "must do more than merely rubber stamp the [ALJ]'s decision []." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (alterations in original) (quoting *Erhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)). The deferential standard "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). "Rather, it is up to the ALJ to articulate the relevant evidence and explain how that evidence supports her ultimate determination." *Noonan v. Saul*, 835 F. App'x 877, 880 (7th Cir. 2020). The Seventh Circuit has recently explained that what is required is "ALJs [to] provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (internal citations and quotation marks omitted). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). The Court may reverse and remand the decision "if the ALJ committed an error of law or based her decision on serious factual mistakes or omissions." *Judy M. v. Kijakazi*, No. 21 C 2028, 2023 WL 2301448, at *3 (N.D. Ill. Feb. 28, 2023) (citation omitted). If substantial evidence supports the ALJ's decision and reasonable minds could disagree on whether a

claimant is disabled, the court must affirm the Commissioner's decision. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

## III. DISCUSSION

Seeking remand or an award of benefits for the period November 1, 2019, through September 30, 2022, Plaintiff argues that the ALJ failed to properly assess her fatigue, erred in determining mental work ability, erred in assessing the treating opinion evidence, and the ALJ did not set forth a legally sufficient symptoms assessment. [10] at 6-15. The Court analyzes each set of arguments in turn below.

**A. The ALJ's assessment of Plaintiff's fatigue does not require a remand.**

Plaintiff argues that the ALJ committed reversible error because she failed to properly assess Plaintiff's fatigue with her fibromyalgia and corresponding work limitations. [10] at 6-7. The Commissioner responds that the ALJ did properly assess Plaintiff's fatigue and accounted for her associated work-related limitations and the ALJ's assessments are supported by the record. [12] at 3-5.

The ALJ considered Plaintiff's complaints of fatigue associated with her fibromyalgia in her decision. Specifically, in addressing Plaintiff's fatigue, the ALJ found that the record did support that there were physical and mental limitations associated with Plaintiff's fatigue, and thus reduced Plaintiff's RFC to demands of light work activity, and simple routine tasks. However, the ALJ did not find that Plaintiff's fatigue resulted in work-preclusive limitations.

The ALJ reasoned that despite Plaintiff's credible reports of fatigue, Plaintiff's medical "records show claimant reported improved control of her … fibromyalgia symptoms, and reported feeling that her pain was manageable with her current

medications.". (*Id.* at 30). Further, Plaintiff displayed a normal gait and full motor strength (*id.* at 38), and her concentration and attention was generally intact. (*Id.* at 33-34). Plaintiff was also able to perform activities of daily living, walk without the use of a mobility device, and even was able to exercise, providing evidence that her symptoms did improve with treatment. (*Id.* at 29-31). While the ALJ did not set forth a specific discussion on fatigue, she thoroughly considered the impact of Plaintiff's rheumatoid arthritis and fibromyalgia, both of which cause fatigue. This is not reversible error. The Court does not find that the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review", requiring a remand. *Kastner v. Astrue*, 697 F.3d at 646. Indeed, the Court did not have difficulty following the ALJ's reasoning in her twenty-two page single spaced opinion in which the ALJ provided a robust explanation and evidentiary support for her decision. The Court is thus satisfied that the ALJ considered Plaintiff's fatigue in her assessment of Plaintiff's associated work-related limitations. No remand is necessary on this basis.

### B. The ALJ did not err in determining Plaintiff's mental work ability.

Next, Plaintiff argues that the ALJ failed to set forth the required support for finding no mental limitations other than simple work with simple decisions, requiring remand. [10] at 6-11. The Commissioner responds that the ALJ reasonably accounted for Plaintiff's work-related mental limitations that were supported by the record, and Plaintiff's request to reweigh the evidence is not a basis for remand. [12] at 5-9. The Court agrees with the Commissioner.

The ALJ determined that Plaintiff could perform modest mental demands and carry out simple, routine instructions, and make simple work-related decisions. [9-1] at 26. The ALJ made this RFC assessment based on both abnormal and normal mental status examination findings, treatment records, and Plaintiff's daily activities. The Act requires that the RFC finding be based on all of the relevant evidence. 20 C.F.R§ 404.1545(a)(3).

In making her determination, the ALJ found the evidence from the Agency reviewers that Plaintiff did not have a severe mental impairment unpersuasive. Instead, the ALJ came to her decision upon review of the relevant medical and other evidence in the record, which provided only *limited* support for Plaintiff's testimony. Specifically, the ALJ found that the record tended to support that Plaintiff's symptoms were not as severe, persistent or limiting as she alleged. [9-1] at 32.

The ALJ considered that Plaintiff was treated for anxiety, depression, and prescribed anti-depressant medications (in part to treat her fibromyalgia). (*Id.*). Plaintiff also sought psychotherapy sessions and case management services. The record showed that despite her treatment, Plaintiff continued to complain of ongoing anxiety and depression. (*Id.*). The ALJ found that Plaintiff's records were consistent with her testimony, in that she continued to have some cognitive issues, such as brain fog and issues with her memory and processing speed. (*Id.*). However, the record also supported that Plaintiff repeatedly reported "experiencing better control of her anxiety and depression with the aid of her medication, and show[ed] that she repeatedly denied experiencing any severe ongoing depression." (*Id.*). Further,

Plaintiff reported that she experienced improvement in her cognitive functioning on Cymbalta. (*Id.*). Her treatment records also showed providers themselves observed Plaintiff's improvements, undermining her allegations of severity. (*Id.* at 33). ("[R]ecords show that Ms. Mansfield herself also observed the claimant to seem less depressed and symptomatic, and noted that she seemed to be improving mentally.").

In making her RFC assessment, the ALJ also considered that the record supported that the Plaintiff's psychotherapists have repeatedly observed her to exhibit normal cognition, with normal memory, good insight and normal judgment. (*Id.*). The record shows that Plaintiff was observed to exhibit a friendly demeanor, clear speech, and that she was able to complete a range of tasks that tested her cognitive functioning. (*Id.*).

Additionally, the ALJ considered Plaintiff's activities of daily living in making her RFC assessment. The ALJ considered that Plaintiff continued to live alone, prepared meals and performed household tasks, including: cleaning, washing dishes, and doing laundry. (*Id.*). Plaintiff also socialized outside the home and engaged in activities that tend to require sustained attention. While the ALJ cannot use solely Plaintiff's activities of daily living to come to her conclusion, her decision articulated sufficiently that this was not the only evidence she used. *See supra* (treatment records exhibited some normal cognitive functioning and treaters described improvement with medication).

Plaintiff further argues that the ALJ faced an evidentiary gap after discounting the state agency's opinions, assessing the limiting effects of Plaintiff's

mental impairments on her own. But ALJs, not doctors, are responsible for assessing a claimant's RFC based on the relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). The Court will only find an evidentiary deficit where an RFC is not tethered to any evidence. Here, as explained *supra*, the ALJ considered both treatment notes from Plaintiff's treaters as well as Plaintiff's reported activities of daily living, supporting her conclusion with more than a mere scintilla of evidence. And at bottom, where reasonable minds could disagree on Plaintiff's disabled status, this Court must affirm the ALJ's decision. *Burmester*, 920 F.3d at 510.

In sum, the ALJ's consideration of Plaintiff's daily activities and Plaintiff's treatment records satisfy the Court that the ALJ supported her conclusion with substantial evidence, and a remand is not required.

**C. The ALJ did not err in assessing the treating opinion evidence.**

Plaintiff argues that the ALJ reversibly erred in assessing the treating opinions of Dr. Drevlow and Dr. Schoenhofen. [10] at 11-14. The Commissioner responds that the ALJ appropriately considered the evidence provided, and substantial evidence supports the ALJ's findings. [12] at 9-12.

The revised regulatory framework governed the ALJ's evaluation of the medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01 (Mar. 27, 2017)). 20 C.F.R § 404.1520C provides that the most important factors the ALJ are to consider when evaluating the persuasiveness of medical opinions and prior administrative medical findings "are supportability and consistency". The decision should allow a reviewing court "to trace the path of the

adjudicator's reasoning," but need not explain how each piece of evidence was considered. 82 Fed. Reg. 5844, 5858.

The ALJ found Dr. Barbara Drevlow, M.D.'s opinion that Plaintiff is incapable of performing even sedentary work unpersuasive. [9-1] at 37. Dr. Drevlow noted that Plaintiff complained of a range of ailments, including back pain, joint pain, stiffness, fatigue and brain fog, and Plaintiff exhibited tenderness in multiple parts of her body and hypermobility in her fingers. (*Id*. at 37-38). But the ALJ reasoned Dr. Drevlow's opinion seemed overly restrictive in light of the medical evidence. (*Id*. at 38). Specifically, although the treatment records showed Plaintiff exhibited limited range of motion in her neck, and some pain and mobility issues in her fingers, the records also showed Plaintiff experienced significant improvement in both pain and mobility over the course of treatment, with improved control of her symptoms. (*Id*.). Dr. Drevlow herself observed Plaintiff repeatedly exhibited intact pinch and grip strength in her hands, with good proximal muscle strength in her extremities. (*Id*.). Another physician, Dr. Pallaci, D.O., observed that Plaintiff "exhibit[ed] normal range of motion throughout her neck, back and extremities, with intact strength in her upper and lower extremities, and a normal gait, further noting that she was able to get on and off the exam table, tandem walk, walk on her heels and toes, and squat and arise without any apparent difficulty.". (*Id*. at 37).

The ALJ also found Dr. Schoenhofen's opinion unpersuasive. Dr. Thomas Schoenhoefen, D.O., Plaintiff's primary care provider, provided a similarly restrictive opinion precluding sedentary work. (*Id*. at 30-31, 36-37). Similarly, the ALJ found his

opinion overly restrictive considering the medical evidence, including his own treatment notes. (*Id.* at 37). Indeed, Dr. Schoenhofen's treatment records show that Plaintiff experienced significant improvements in her pain and mobility throughout the treatment period, with improved control of her rheumatoid arthritis. Records further showed that Plaintiff's mental health symptoms also responded favorably to treatment. (*Id.*).

The Court finds that the ALJ's decision to not rely on Dr. Drevlow or Dr. Schoenhofen is supported by the evidence. No remand is required. As is the case here, the Seventh Circuit has held that an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes." *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021). *See also Fair v. Saul*, 853 F. App'x. 17, 21 (7th Cir. 2021) (ALJ properly discounted treating physician's opinion where his "own records did not support his conclusions.")

In sum, the Court is satisfied that the ALJ has built a logical bridge between the evidence in the record and the ALJ's assessment. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion.").

**D. The ALJ set forth a legally sufficient symptoms assessment.**

Plaintiff argues that the ALJ's subjective evaluation of the Plaintiff's testimony was wrong, and the ALJ failed to provide a rationale as to why she found Plaintiff's statements were inconsistent with the record. [10] at 14-15. The

Commissioner responds that the ALJ gave proper reasons for discounting Plaintiff's testimony. [12] at 12-14. The Court agrees with the Commissioner.

The ALJ found that Plaintiff's statements were not entirely consistent for multiple reasons. First, the ALJ observed that Plaintiff's physical and mental capacities increased when she had treatment. Specifically, the records established that various and targeted treatment and medications significantly increased Plaintiff's mobility, decreased her pain, and improved her dizziness/vertigo/fatigue. Second, the ALJ considered Plaintiff's fibromyalgia, acknowledging that Plaintiff consistently and reliably complained of pain, fatigue and tenderness. The ALJ reduced Plaintiff's RFC in accordance with Plaintiff's testimony. However, the ALJ did not find Plaintiff's complaints of severity consistent with all of the evidence. It is proper for the ALJ to discount allegations based on objective evidence. *See Ellen B. v. Saul*, No. 19 CV 2389, 2020 WL 1912228, at *5 (N.D. Ill. Apr. 20, 2020) (finding the ALJ properly discounted fibromyalgia allegations based on objective evidence where the ALJ also considered other factors like treatment and daily activities). Third, Plaintiff performed many daily activities, including routinely caring for herself, cleaning, washing dishes, laundry, and engaging in activities that required sustained attention.

Plaintiff argues that the ALJ failed to explain why basic daily activities demonstrated an ability to work. [10] at 15. The Court agrees that there are differences between activities of daily living and activities in a full-time job, and the two should not be compared. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)

(activities of daily living and activities in a full-time job contain critical differences). Plaintiff is generally correct that "a claimant's ability to perform daily activities does not necessarily translate into an ability to work full time." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). At the same time, the law is clear that an ALJ may consider a claimant's daily activities to determine if they corroborate claims of pain. *Id.* (the ALJ correctly considered Plaintiff's daily activities to see if they corroborated the claimant's pain). Here, the ALJ did not equate Plaintiff's daily activities to full-time work. Rather, the ALJ considered Plaintiff's activities to determine where her testimony was credible. The Court does not find that the ALJ's assessment violated SSR 16-3 or was so erroneous as to warrant remand.

Because the ALJ supported her RFC assessment with substantial evidence in the record, coupled with the deferential standard afforded to ALJs, the Court finds that a reversal and remand is unnecessary in this case.

## IV. CONCLUSION

For these reasons, the Court affirms the ALJ's decision and Plaintiff's motion for summary judgment [10] is denied and the Commissioner's motion for summary judgment [11] is granted. The Clerk is directed to enter judgment in favor of the Commissioner. Civil case terminated.

E N T E R:

Dated: January 17, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge